## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHER DIVISION

**JASON FOLTZ,**

     **Plaintiff,**

**v.**

**FCA,**

     **Defendant.**

_____/

**Case No. 18-13882**

**Hon. Denise Page Hood**

## OPINION AND ORDER GRANTING DEFENDANT FCA'S
## MOTION FOR SUMMARY JUDGMENT (ECF No. 47)
## and
## DISMISSING ACTION

**I.     BACKGROUND**

    **A.     Procedural History**

On December 13, 2018, Plaintiff Jason Foltz ("Foltz") filed a *pro se* Complaint against Defendants UAW Local 1264 ("UAW") and Fiat Chrysler America ("FCA" or "Defendant") alleging retaliation under the Americans with Disabilities Act of 1990 ("ADA"). [ECF No. 1] On February 19, 2019, UAW filed a Motion for Judgment on the Pleadings. [ECF No. 16] On August 21, 2019, the Court granted UAW's Motion for Judgment on the Pleadings and terminated UAW as a defendant in this matter. [ECF No. 21]

1

On September 29, 2019, Foltz filed a Motion to Amend/Supplement his Complaint. [ECF No. 25]  On December 20, 2019, the Court granted in part and denied in part Foltz's Motion to Amend/Supplement his Complaint. [ECF No. 38] That Order allowed Foltz to supplement his original Complaint "to add additional allegations of retaliation under the [ADA] which occurred after the filing of his original complaint." [ECF No. 38, Pg.ID 281]  On December 22, 2019, Foltz filed a supplemental pleading, which added additional allegations of retaliation that occurred after he filed his original Complaint.  Those allegations include two written warnings, a disciplinary suspension, and a temporary miscoding of his vacation days. Foltz alleges that all those actions occurred in response to his EEOC charges.  On June 12, 2020, Defendant filed a Motion for Summary Judgment.  [ECF No. 47]  On June 15, 2020, Foltz filed his Response.  [ECF No. 49]  Defendant filed its Reply on July 16, 2020. [ECF No. 50]  A hearing was held on the matter.

### B.    Factual Background

The facts as alleged in the Complaint are as follows.  Foltz is an employee of FCA and a member of UAW.  [ECF No.1, Pg ID 6]  He began working for FCA in May 1996, and has been a Technical Specialist at its Trenton South Engine Plant ("TSEP") since September 27, 2010.  [*Id.*]  On January 11, 2011, Foltz was forced out of work on a sickness and accident disability by FCA.  [*Id.* at 6]  After this incident occurred, Foltz filed a discrimination charge with the Equal Employment

2

Opportunity Commission ("EEOC") against FCA under the ADA in 2011.  [*Id.* at 6; 13]  This charge was resolved on July 12, 2012, when the EEOC issued Foltz a "Conciliation Failure" Notice of Right to Sue Letter.  [*Id.*]

FCA eliminated its Technical Specialist positions in November 2011 following the implementation of a Collective Bargaining Agreement ("CBA") between FCA and UAW.  [*Id.* at 7]  The elimination of the Technical Specialist positions directly affected 37 of FCA's employees.  [*Id.* at 6]  The 37 FCA Technical Specialists were given two options on an election form regarding how they could proceed after their positions were eliminated: (1) enter an apprenticeship program; or (2) return to a non-skilled position with a lower pay rate.  [*Id.* at 6]  Foltz chose to enter the apprenticeship program and signed the election form on July 18, 2013.  [*Id.* at 19]  Foltz subsequently completed the apprenticeship program and became a Journeyman Pipefitter at FCA.  [*Id.* at 19; 21]

Foltz's election form stated that after he completed his apprenticeship, his seniority date would be the date on which he became a Technical Specialist.  [*Id.*]  According to Foltz, his seniority date that he was given following the completion of his apprenticeship did not reflect the agreed upon date that was listed on his election form.  [ECF No. 19, Pg ID 100]  Fourteen out of forty-three pipefitters' seniority dates were incorrect, which was significant because it affected employees' overtime and shift choices.  [ECF No. 1, Pg ID 7]  On March 8, 2018, Foltz filed a grievance

pertaining to his seniority date, but UAW withdrew his grievance on April 13, 2018, [*Id.* at 17] citing the superiority of the national CBA, which had a different, contradictory provision regarding seniority. [ECF No. 47, Pg.ID 333] The superseding CBA provided that:

> (12) Seniority
>
> Upon satisfactory completion of the term of apprenticeship, the graduate apprentice shall immediately become a Journeyman and shall be given a seniority date which shall reflect six (6) month seniority for each 1000 hours in the Schedule of Work Processes in his trade, but <u>in no event shall a graduate apprentice be given a seniority date earlier than the date set forth in the Apprentice Agreement as the date his apprenticeship began.</u>

[ECF No. 47-2, Pg.ID 359 ¶ 12] (emphasis added).

On May 8, 2018, Foltz filed an EEOC retaliation charge against FCA under the ADA and claimed that his seniority status was negatively affected because of the EEOC charge that he filed in 2011. [ECF No.1, Pg.ID 21]

Foltz filed his Complaint against FCA for unlawful retaliation under the ADA. As he did in his EEOC charges, Foltz alleges that FCA amended his seniority status because he previously filed an EEOC claim against it in 2011. [*Id.*]

Foltz's supplemental pleadings allege that his written disciplinary warnings in April and September 2019 are also retaliatory actions for filing his EEOC complaints. [ECF No. 39] In April 2019, Foltz received a written warning for failing to complete a work assignment, in violation of Standard of Conduct No. 5—"Failure

to exert normal effort on the job" and Standard of Conduct No. 6— "Failure or refusal to follow the instructions of management." [ECF No. 47, Pg.ID 335] And on September 24, 2019, Foltz received another written warning for refusing an assignment from his supervisor. [*Id.* at 336]  This refusal violated Standard of Conduct No. 5—"Leaving your workstation . . . assigned worksite or plant during working hours without permission . . . ." [*Id.*]

On June 21, 2019, Foltz was suspended by his supervisor, John Vargo ("Vargo") because he declined to perform a work assignment.  [ECF No. 39, Pg.ID 289]  Foltz told Vargo that he would not complete the assignment with his partner because he perceived his partner to be unsafe.  [*Id.*]  Upon further questioning by Vargo, Foltz did not elaborate.  [ECF No. 47, Pg.ID 337]  Rather, Foltz refused to work and requested to speak with a plant safety representative.  [*Id.*]

According to Defendant, Vargo did contact a safety representative to review the area and situation.  [*Id.*]  When the safety representative arrived, Foltz had left for lunch.  [ECF No. 39, Pg.ID 290]  Upon Foltz's return, Vargo again requested that Foltz complete the assignment.  [ECF No. 47, Pg.ID 337]  Once again, Foltz declined the assignment.  [*Id.*]  Citing Standard of Conduct No. 6, "Failure or refusal to follow the instructions of management," Vargo suspended Foltz pending an investigation of potential Standards of Conduct. [*Id.*]

In May 2019, Foltz and Defendant disputed how some of his absences were coded. [*Id.*] Although Foltz's absences were excused, they were incorrectly coded as "unexcused absences." [*Id.*] According to Defendant, this dispute was the result of a harmless error and is now resolved. [*Id.* at 338] Defendant's Crewsheet History Report, which tracks employee attendance, now shows that Foltz's absences are coded as vacation days. [*Id.*]

Foltz argues that Defendant's actions have resulted in him having to deal with various unfavorable personal and physical issues. [ECF No. 1, Pg.ID 10] Foltz additionally contends that his participation in the aforementioned EEOC investigations against Defendant has caused him to be excluded from advancing within FCA, even though he is more qualified than other employees. [*Id.*] Foltz is seeking damages, costs, fees, as well as corrective action requiring FCA to "correct the incorrect skilled trades seniority date." [*Id.* at 11]

## II.  ANALYSIS

### A.  Summary Judgment Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine

if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the

summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[A]ny direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting *Muhammad v. Close,* 379 F.3d 413, 416 (6th Cir.2004)).

### B.    Retaliation Claims

#### 1.    *Prima Facie* Case

The ADA's retaliation provision makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."   42 U.S.C. § 12203(a). Foltz does not claim to have direct evidence to support his retaliation claim. Since there is no direct evidence of retaliation, the Court proceeds under the burden-shifting framework used to establish retaliation claims using circumstantial evidence. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).

To establish a *prima facie* case of retaliation under the ADA plaintiff must show that (1) he engaged in activity protected by the ADA;[1] (2) the defendant knew of this exercise of plaintiff's protected rights; (3) the defendant subsequently took an employment action adverse to plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment: and (4) there was a causal connection between the protected activity and the adverse employment action. *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015) (citation omitted). "The required causal connection is a 'but for' relationship." *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir.2012) (en banc). "If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir.1997). The plaintiff bears the burden of proving that the defendant's "proffered reason for the action was merely a pretext for discrimination." *Id.* (citation omitted).

Plaintiff's burden is "minimal at the *prima facie* stage, requiring merely that a plaintiff 'put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity.'" *A.C. ex rel. J.C.*, 711 F.3d at 699 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). The

---

[1] Discrimination under the ADA is not at issue in this case. It is undisputed that Foltz applied for and was granted an accommodation. The only issue regarding the ADA concerns the protections against retaliation.

evidence must, however, be sufficient to allow for an inference that the adverse employment action would not have occurred if plaintiff had not engaged in the protected activity. *A.C. ex rel. J.C.*, 711 F.3d at 699. In short, the protected activity must have been a "but for" cause of the adverse employment action.

### 2. Seniority Date Retaliation Claim

#### a. Causation

Foltz alleges that Defendant's retaliation against him for filing his EEOC claims first manifested itself when Defendant incorrectly calculated his seniority date. Defendant responds that Foltz cannot establish a *prima facie* case of retaliation nor can he establish that Defendant acted with pretext. Defendant specifically asserts that Foltz cannot establish the required causal connection between Foltz's protected activity and the adverse employment action. *Nguyen*, 229 F.3d at 563.

Defendant indicates that Foltz received his skilled trade seniority date on February 28, 2018, which was before Foltz filed his EEOC charge on May 8, 2018. [ECF No. 47, Pg.ID 340; ECF No. 1, Pg.ID 21] Defendant asserts that the Court must use the 2011 EEOC charge as the relevant protected activity for purposes of reviewing Foltz's seniority date claim. Defendant further explains that the seven-year gap between the 2011 charge and Foltz's seniority date calculation precludes establishing a causal connection. Citing *Sanchez v. Caldera*, Defendant argues that Sixth Circuit authority provides that any time frame over six months is generally

insufficient to establish a causal connection. 36 Fed. Appx. 844, 846 (6th Cir. 2002) (internal citation omitted).

Defendant then explains that even if the Court were to look beyond the lengthy gap, Foltz's seniority date claim would still fail because he cannot establish the required connection between his 2011 charge and the assignment of his seniority date. Defendant asserts that Foltz has not provided—and cannot provide—any evidence to show that Defendant's decision was causally linked with his EEOC charge. To support this assertion, Defendant notes that Foltz concedes that none of his Technical Specialist coworkers from TSEP who also entered the apprenticeship program were given a seniority date that is earlier than the date that their apprenticeship program commenced. [ECF No. 47-7, Pg.ID 429] (Deposition of Foltz). Defendant claims that this establishes that Foltz was not singled out, but he was treated exactly the same as his TSEP coworkers.

In response, Foltz argues that two FCA employees, Scott Marschner ("Marschner") and Batavian Wicks ("Wicks"), signed apprenticeship documents on the same day as Foltz, but their seniority dates differ from Foltz's. [ECF No. 49, Pg.ID 532] Defendant counters that Wicks actually has the same seniority date as Foltz. [ECF No. 50, Pg.ID 541]

And concerning Marschner, Defendant states that he is not similarly situated with Foltz. "[T]o be deemed similarly-situated, the individuals with whom the

plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992); *see also Nguyen*, 229 F.3d at 563; *Norris v. Mich. Dep't of Corrections*, 2005 U.S. Dist. LEXIS 33354, at *21-22 (E.D. Mich., Dec. 15, 2005) (Roberts, J.) (unpublished).

As Defendant notes, Marschner began his apprenticeship on May 10, 1999, and withdrew just shy of completing it. [ECF No. 47-3, Pg.ID 374-75] On March 24, 2014, Marschner reentered the apprenticeship program, and he completed it on October 10, 2014. [*Id.*] Marschner completed his program nearly three years before Foltz completed his program in November 2017. [*Id.*] After completing his program, Marschner received a seniority date of October 10, 2010. [*Id.*] His seniority date reflects his prior experience as an apprentice. [*Id.*] Since Foltz had no prior apprenticeship experience, he was assigned his seniority date in accordance to the date he began the program, which was March 24, 2014. [ECF No. 47-7, Pg.ID 425] Defendant explains that Marschner's "significant prior apprenticeship experience" was a "differentiating factor," which warranted an earlier seniority date. [ECF No. 50, Pg.ID 542]

Based on the submissions by the parties and after review of such, the Court finds that Marschner and Foltz are not similarly situated employees. Marschner had significant prior apprenticeship experience whereas Foltz did not.

### b. Pretext

Defendant further asserts that even if Foltz could meet his *prima facie* case, and establish the fourth prong of causation, his claim would still fail because Foltz cannot show that Defendant's "legitimate, non-retaliatory reason" is pretextual. A plaintiff can establish pretext by showing that the employer's proffered reason for an adverse employment action: "(1) ha[d] no basis in fact; (2) did not actually motivate the action; or (3) w[as] insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000)).

Defendant argues that it gave Foltz his seniority date based on the CBA. Defendant argues that this reason was legitimate and non-discriminatory, and that Foltz has provided no evidence to show that this reason is false or not based in fact. *See Manzer v. Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). To prevail on this point, Defendant need only show that its interpretation of the CBA was an "honest belief." *See Wilson v. Ford Motor Co.*, 513 F. App'x 585, 591 (6th Cir. 2013).

The Court finds that Defendant relied on the CBA in good faith, allaying any concerns of pretext. Under the CBA, Defendant gave Foltz the earliest date possible—the first day of his apprenticeship (March 24, 2014). [ECF No. 47, Pg.ID 342] Not only does the CBA unambiguously provide that an apprentice shall not receive a seniority date that is "earlier than the date set forth in the Apprenticeship Agreement as the date his apprenticeship began," [ECF No. 47-2, Pg.ID 359 ¶ 12] but Defendant's interpretation was validated by Foltz's own union. [ECF No. 47-8, Pg.ID 447]

The UAW's approval of the seniority date is evidenced by the withdrawal of its grievance submitted on Foltz's behalf. [*Id.*] The UAW issued a finding on May 7, 2018, which explained that the election form conflicted with the national CBA. [*Id.*] The UAW further asserted that "[u]nfortunately, the national agreement between the UAW and [FCA] prohibit[ed] the UAW and [FCA] from granting a seniority date to a newly licensed journeyperson [such as Foltz] that [was] prior to the date that the journeyperson entered the apprenticeship program." [*Id.*] Defendant asserts that it has adequately used evidence from the record to establish that its actions were legitimate, and not merely pretextual.

In response, Foltz claims that the two documents, the election form and the national collective bargaining unit contradict each other, which implies a pretext for discrimination. Foltz further asserts that FCA retaliated against him via the actions

of the employee Sue Tyndall ("Tyndall").  Foltz alleges that Tyndall threatened to call security on Foltz and another employee. [ECF No. 49, Pg.ID 533]  As Defendant indicates, Foltz's issue with Tyndall is immaterial because Foltz's suspension was issued by Vargo.  Defendant asserts that at best, Foltz's issue with Tyndall is *de minimis* and insufficient to support his retaliation claim. *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012).

To show pretext, "a plaintiff must produce sufficient evidence from which a jury could reasonably reject the employer's explanation for the adverse employment action." *Dekarske v. Federal Express Corp.*, 294 F.R.D. 68, 81 (E.D. Mich. 2013).

The Court finds that Foltz has not established pretext for his seniority date retaliation claim. None of Foltz's arguments about his seniority date illustrate that Defendant's proffered reason for giving him the March 24, 2014 date are "factually false." Although Foltz asks the Court to determine whether the CBA itself violates ADA law, or whether selective enforcement of the CBA is a violation of ADA law, the Court cannot rule on the validity of the election form compared to the CBA. To do so would violate the Sixth Circuit's instructions that courts not act as "super-personnel department[s]" and substitute their judgment for that of the UAW and Defendant.  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). Foltz has not produced sufficient evidence to show that Defendant's explanation for the adverse employment action was pretextual.

15

### 3. April 15, 2019 and September 24, 2019 Written Warnings

#### a. Causation

Defendant asserts that Foltz's retaliation claims based on his April and September 2019 written warnings also fail as a matter of law. Specifically, Defendant argues that Foltz cannot establish the causation element of the *prima facie* case.

On April 14, 2019, Foltz and his coworker, Mike Chapman ("Chapman") were both reprimanded for failing to complete an assignment on Line 25. [ECF No. 47, Pg.ID 345] Foltz claims that he was unable to complete his assignment because Chapman refused to help him. [*Id.*] However, according to Defendant and Foltz's deposition, Foltz never tried to contact his supervisor to document Chapman's subordinance or to ask for additional assistance. [*Id.*] Nor did Foltz contact his union representative for assistance. [*Id.*]

Adopting the same "but-for" standard applied to show a *prima facie* case in the seniority date issue, a reasonable jury could not find that Foltz's EEOC charges were the but-for causes for his written warnings. *Lewis*, 681 F.3d at 321. Foltz needs proof "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Laster v. City of Kalamazoo*, 746 F.3d, 714, 731 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct 2517, 2533 (2013)).

Defendant's arguments and the record demonstrate that Foltz was insufficiently motivated to request assistance or reach out to his supervisor. Foltz also did not reach out to his union representative. Foltz has not shown that his supervisor's discipline of Foltz for the April 2019 incident was in retaliation for Foltz filing EEOC charges.

As a procedural matter, Defendant claims that Foltz's September 2019 claim must fail because he did not address it in his Response, which establishes Foltz's abandonment of that claim. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

Notwithstanding Foltz's procedural issues, his September 2019 claim fails for other reasons. On September 24, 2019, Foltz received a warning because he "abruptly" disappeared from his workstation for approximately 20 minutes during a "time-sensitive" assignment. [ECF No. 47, Pg.ID 346] Nothing in the record establishes that Foltz's protected activity caused his September 2019 warning.

### b.    Pretext

Defendant further explains that even if Foltz could meet his *prima facie* burden for causation, his retaliation claims stemming from his written warnings still fail because Foltz cannot establish pretext. In response to Defendant's arguments

for the April 2019 incident, Foltz argues that Defendant retaliated against him because the dates of his April 2019 written warning were incongruent with those of his coworker's, Chapman. To support this, Foltz directs the Court to his supplemental pleadings. [ECF No. 39]  However, as Defendant points out, Foltz does not actually dispute the reasons given for his written suspension. He only highlights that his disciplinary dates do not align with those of Chapman's. Chapman received his disciplinary notice a day after Foltz and served his suspension from April 24-26. [ECF No. 50, Pg.ID 543]

Defendant asserts that Foltz's complaints about the dates are *de minimis* and have no bearing on the instant motion for summary judgment.  *See A.C. ex rel. J.C.*, 711 F.3d at 698 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) ("To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify.").

Relying on the same standard for pretext mentioned above, Foltz has not met his burden.  The Court finds that the warnings were based in fact—both warnings were direct responses to employee violations.  Defendant's stated reasons motivated Foltz's discipline—Foltz does not dispute that he and Chapman failed to complete their assignment on April 14, 2019.  Nor does Foltz dispute that he left his workstation after his supervisor requested his assistance in September 2019.

Defendant's actions were supported by the various Standards of Conduct, highlighted by Defendant, that Foltz violated (various provisions of Standards 5 and 6). Defendant has sufficiently supported its motion that its actions were not pretextual to retaliate Foltz's EEOC filings and Foltz has not produced any evidence to create a genuine issue of material fact.

### 4. Foltz's June 21, 2019 Suspension

Foltz claims that his June 2019 suspension is also a retaliatory action for his protected activity. Defendant argues that Foltz is unable to establish causation or pretext.

On June 21, 2019, Foltz was suspended because he failed to follow his supervisor's orders. Although Foltz argues that his work conditions were unsafe, the record shows that Foltz's supervisor inquired about the safety and requested an inspection from the safety representative. Upon inspection, Foltz again refused to complete the assignment.

Foltz is unable to establish that his EEOC charges were the "but-for" reasons for his suspension. It is undisputed that Foltz refused his work assignment. And as Defendant points out, Foltz's supervisor, Vargo, was unaware of Foltz's EEOC charges. Vargo had adequate reasons to determine that Foltz violated the Standards of Conduct.

Foltz is also unable to establish that Defendant's stated reasons are merely pretextual. Defendant states that Foltz cannot survive the instant motion for summary judgment because he has not provided evidence to refute Defendant's legitimate reasons for disciplining Foltz. Defendant notes that Foltz directs the Court to his previous pleadings. Foltz's supplemental pleading alleges that Vargo gave the assignment to someone else after Foltz complained. [ECF No. 39, Pg.ID 289] Foltz further alleges that he did not "abruptly" disappear but left for lunch. [*Id.*] Foltz also asserts that Vargo never called or spoke with a safety representative. [*Id.*] Defendant asserts that Foltz's sole reliance on his pleadings is not sufficient to establish a genuine issue of material fact.

In order to survive the instant Motion for Summary Judgment, Foltz would need to do more than rely "on allegations or denials in [his] own pleading; rather, [his] response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

The Court finds that Foltz has not established a genuine issue of material fact as to the June 2019 suspension claim, even if it were to consider Foltz's previous submissions. Given the record, Defendant has supported that it had a reason to suspend Foltz in June 2019. The record establishes that Defendant's actions were motivated by Foltz's insubordination, and not his protected activity. This is

bolstered by the fact that Vargo was unaware of any of Foltz's past EEOC charges. [ECF No. 47, Pg.ID 349]

### 5. Foltz's Disputed Vacation Days

Foltz asserts that Defendant intentionally miscoded his vacation days as unexcused absences to punish him for his protected activity.  In response, Defendant asserts that its actions did not meet the criteria for an "adverse employment action." To meet this standard, Foltz must illustrate that a reasonable employee would have found the contested action "materially adverse*." Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

In this context, materially adverse means that Defendant's actions would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*; *see also Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009). Defendant asserts that since the mistaken coding was temporary, Foltz was not disciplined, did not lose any pay, and did not receive discipline of any consequence that would dissuade a reasonable employee from engaging in protected activity.

The Court finds that the vacation day claim does not rise to the level of a "materially adverse" action by Defendant.  As shown by Defendant, Foltz was not disciplined, nor received any adverse action for the mistaken coding of his vacation

time.  Foltz has failed to create a genuine material issue of fact that he suffered a material adverse action by the miscoding of his vacation time.

## III.    CONCLUSION

After reviewing the record and for the reasons set forth above, the Court finds that Foltz has not adequately shown causation for his retaliation claims for his seniority date, two written warnings, or his suspension. The Court further finds that the miscoding of Foltz's vacation days did not suffer any "material adverse" for the miscoding.

Accordingly,

IT IS ORDERED that Defendant FCA's Motion for Summary Judgment (ECF No. 47) is GRANTED.  All of Foltz's retaliation claims are DISMISSED.  This action is designated as CLOSED on the Court's docket.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: March 29, 2023

22